UNITED STATES OF AMERICA

IN THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Derek Antol,<br>    Plaintiff | Case No. 1:25-cv- 170 |
| v. | Hon.<br>District Court Judge |
| Robert English, Ryan Dangl, Victoria Bordner,<br>Elizabeth Bourgeois, Jacob Lewis,<br>Mark Kassuba, Michael McDonald, Scott Josephs,<br>Lynard Oliver, Kevin Klomparens, Scott Godair,<br>Bradley Stimac, Jonathan Meyer,<br>Kaylie Birgy, Nicholas Reszka,<br>Shelly Izzard, Trooper 1 Ed Brinkman,<br>Trooper 2 Jacob Choice,<br>    Defendants. | |

_____/

J. Nicholas Bostic  P40653
Attorney for Plaintiffs
909 N. Washington Ave.
Lansing, MI 48906
517-706-0132
barristerbosticlaw@gmail.com

_____/

## COMPLAINT AND JURY DEMAND

Plaintiff, for his complaint, states:

1. Plaintiff Derek Antol is a competent adult and a resident of Muskegon County and the Western District of Michigan.

2. Defendant Robert English was at all times pertinent to this complaint a member of the Michigan State Police acting under color state law.

3. Defendant Ryan Dangl was at all times pertinent to this complaint a member of the Michigan State Police acting under color of state law.

4. Defendant Victoria Bordner was at all times pertinent to this complaint a member of the Michigan State Police acting under color of state law,

1

5. Defendant Elizabeth Bourgeois was at all times pertinent to this complaint a member of the Michigan State Police acting under color of state law.

6. Defendant Jacob Lewis was at all times pertinent to this complaint a member of the Michigan State Police acting under color of state law.

7. Defendant Mark Kassuba was at all times pertinent to this complaint a member of the Michigan State Police acting under color of state law.

8. Defendant Michael McDonald was at all times pertinent to this complaint a member of the Michigan State Police acting under color of state law.

9. Defendant Scott Josephs was at all times pertinent to this complaint a member of the Michigan State Police acting under color of state law.

10. Defendant Lynard Oliver was at all times pertinent to this complaint a member of the Michigan State Police acting under color of state law.

11. Defendant Kevin Klomparens was at all times pertinent to this complaint a member of the Michigan State Police acting under color of state law.

12. Defendant Scott Godair was at all times pertinent to this complaint a member of the Michigan State Police acting under color of state law.

13. Defendant Bradley Stimac was at all times pertinent to this complaint a member of the Michigan State Police acting under color of state law.

14. Defendant Jonathan Meyer was at all times pertinent to this complaint a member of the Michigan State Police acting under color of state law.

15. Defendant Kaylie Birgy was at all times pertinent to this complaint a member of the Michigan State Police acting under color of state law.

16. Defendant Nicholas Reszka was at all times pertinent to this complaint a member of the Michigan State Police acting under color of state law.

17. Defendant Shelly Izzard was at all times pertinent to this complaint a member of the Michigan State Police acting under color of state law.

18. Defendant Trooper 1 Ed Brinkman was at all times pertinent to this complaint a member of the Michigan State Police acting under color of state law.

19. Defendant Trooper 2 Jacob Choice was at all times pertinent to this complaint a member of the Michigan State Police acting under color of state law.

20. The county of residence for all Defendants is unknown to Plaintiff.

21. Each Defendant conducts his or her business as a Michigan State Police officer throughout the state and for purposes of this Complaint in Kent County and Muskegon County in the Western District of Michigan.

22. All Defendants are named in their individual capacities.

23. This cause of action arose in Muskegon County in the Western District of Michigan.

24. This Court has jurisdiction pursuant to 28 USC 1331 as the claims are based on 42 USC §1983 and alleged violations of Plaintiff's federal constitutional rights.

## GENERAL ALLEGATIONS

25. Paragraphs 1 through 24 above are incorporated herein by reference.

26. On April 8, 2022, Defendant English submitted an affidavit to a state magistrate for a search warrant to search 1769 Green Creek Road in Muskegon County.

27. Plaintiff Derek Antol is the fee simple owner of this parcel of property used as his dwelling.

28. Also residing with Plaintiff was his minor daughter, EA, who had been diagnosed with sensory processing disorder and had indicators consistent with high functioning autism.

29. On April 8, 2022, the state court magistrate issued a search warrant as requested by Defendant English and based on his misrepresentations made under oath.

30. On April 11, 2022, Defendant English along with all named Defendants and others presently unknown entered the property, curtilage, outbuildings, and dwelling of Plaintiff.

31. On April 11, 2022, Defendant English along with all named Defendants and other presently unknown detained Plaintiff at his kitchen table while they searched the premises and seized property.

32. No charges were ever filed against Plaintiff involving the observations or seizures made at Plaintiff's dwelling.

33. No forfeiture action was ever filed regarding Plaintiff's property most of which was returned to him months later.

COUNT I – VIOLATION OF THE FOURTH AMENDMENT
(42 U.S.C. §1983 – entry and search of home - all Defendants)

34. Paragraphs 1 through 33 above are incorporated herein by reference.

35. The affidavit submitted on April 8, 2022 contained numerous materially false statements.

36. The affidavit failed to include material information to negate probable cause of which Defendant English knew or should have known but failed to include.

37. The affidavit in support of the search warrant sought seizure of 18 categories of personal property or data.

38. Defendant English relied on written reports of numerous other officers that had led the purported investigation over a period of several years prior to obtaining the warrant and

he had no personal knowledge of events occurring prior to his assignment to the case in September 2021.

39. Paragraph 3.a. of Defendant's Search Warrant Affidavit is false to the extent it claims that the Trooper Greenert was provided information from a local drug team because the Michigan State Police Central Records Section has declared that no such records exist.

40. Paragraph 3.e. falsely states that Deuces Wild Smoke Shop is owned by Derek Antol and Samantha Conklin because the entity Deuces Wild Smoke Shop is solely owned by Plaintiff Derek Antol.

41. Paragraph 3.e. also falsely claims that Derek Antol does not have a medical marihuana card because the report Defendant English authored on April 13, 2022 confirms that Plaintiff is a registered medical marihuana patient who is allowed to possess his own plants and contrary to a statement made under oath by a different Trooper in a previous affidavit to seek a warrant for using a thermal imaging device.

42. Paragraph 3.h. is misleading because it creates an inference that Plaintiff was not charging sales tax on merchandise sold.

43. Paragraph 3.h. is also misleading because it creates an inference that some type of security measure is required to prevent customers from being able to "handle" marihuana.

44. Paragraph 3.*l*. falsely claims that a person named Robert Holm may be a part owner of Deuces Wild Smoke Shop.

45. The allegations in Paragraph 3.m. and 3.n. of the affidavit authored by Defendant English state:

> m. On 02/04/2020 at approximately 1600 hrs., D/Tpr. Patel entered Deuce's Wild Smoke Shop to purchase marijuana. As he walked in, he noticed the register is straight back from the entrance doors near the rear of the building. D/Tpr. Patel saw two personnel in the store, one who was a female and the

5

    second was a male, who was later identified as the owner Derek Antol. It seemed both were packaging up product for the store.
    n. The female contacted D/Tpr. Patel and asked him if she could help him. The female, who was later identified as "Autumn" on the store receipt, walked behind the cash register. D/Tpr. Patel asked "Autumn" if the store was still running its $35 promotion to receive 1/8 ounce of marijuana. "Autumn" advised that they were and stated he needed to buy a $35 pipe. She also stated this special is only running during Thursday through Sunday. D/Tpr. Patel asked "Autumn" if there is any way she could sell him it today as he did not have any for the day. After a bit more rapport building, she told D/Tpr. Patel to hold on and said she would have to get the owner's approval. "Autumn" said he was in luck as the owner was in today. "Autumn" yelled out "Derek, can I sell him the marijuana." Derek looked up from what he was doing and **stated why not**. D/Tpr. Patel then purchased 1/8  marijuana from "Autum" for $35 and received a small glass pipe. D/Tpr. Patel then went up to Derek and thanked him for allowing him to buy the marijuana. Derek said it was no problem and to come back again.

46. The representations in Paragraph 3.m. and 3.n are false because:

    a. Plaintiff and the employee were not packaging marijuana (or "product") but Plaintiff was unpacking gem stones and pricing them for placement on the store shelving;

    b. Autum Homoly did not yell out "Can I sell him the marihuana" but asked "Can I sell him a pipe?";

    c. After Plaintiff gave approval for the transaction, D/Tpr. Patel did not "buy marijuana" but bought a pipe and received a gift of marijuana.

47. Paragraph 3.q. is misleading because it creates an inference that Plaintiff was not charging sales tax on merchandise sold.

48. Paragraph 3.u. is false by claiming a "retail value" of a pipe purchased because the volume purchases of these pipes made by Plaintiff do not establish that value at either the wholesale or retail level.

6

49. Paragraph 3.aa. is misleading because it reports the TSYS total of $649,468.58 covering a time frame of 20 months and 14,860 transactions but then mentions only income reported on a joint individual state income tax return for one year.

50. Paragraph 3.aa. is misleading by claiming that Plaintiff and his wife reported income of $137,463 because the income reported was $127,128.00 and $10,335.00 was added to preclude the federal reduction in taxable income by one-half of self-employment tax in compliance with state law.

51. Paragraph 3.aa. is misleading by claiming that the tax return for Deuce's Wild Smoke Shop for 2018 showed gross sales of $140,231.87 and payroll as $14,030.24 because those figures appear only on the 2018 Annual Sales, Withholding, and Use Tax for Deuces Wild and do not serve as an income tax return.

52. Paragraph 3.aa is false in claiming that the 2019 Michigan return showed a "severe underreporting of income" because Defendant English had no information about self-employment income reported on a federal Schedule C or whether Plaintiff took a salary in lieu of draws as the owner, or whether Samantha was carried as an employee.

53. Paragraph 3.aa. is false in claiming that the 2019 Michigan return showed a "severe underreporting of income" because Defendant English had no information regarding proper deductions from income as allowed by the taxing authorities that would be carried on a Schedule C or Schedule E of a federal tax return which would in turn impact the adjusted gross income to transfer to the Michigan 2019 individual return.

54. Paragraph 3.aa. is false in claiming that the tax return for Deuce's Wild Smoke Shop showed $0 in sales and payroll was $61,715.50 because those figures appear only on the

7

2019 Annual Sales, Withholding, and Use Tax for Deuces Wild and do not serve as an income tax return.

55. Paragraph 3.jj. is misleading because it creates an inference that Plaintiff is misleading his banks or vendors and thereby causing them to violate federal law.

56. Paragraph 3.jj. is also false because federal law does not prohibit federally insured banks from banking for direct or indirect marihuana businesses but requires those banks to report transactions to the Financial Crimes Enforcement Network (FinCEN).

57. Paragraph 3.kk. is misleading because it creates an inference that Plaintiff is laundering illegally obtained money simply by using a bank and writing checks to himself from his accounts and is directly contradictory to many other paragraphs which document Plaintiff's use of banks, transaction vendors, and reporting his income and/or sales to taxing authorities.

58. The affidavit is missing material information because Defendant English failed to make a request to FinCEN for any federal income reports.

59. The affidavit regarding the report from Michigan Treasury about 2018 and 2019 state individual tax returns was stale as it was dated January 29, 2021 but the affidavit was not presented to the magistrate until April 8, 2022.

60. Defendant English had numerous bank statements for several of Plaintiff's accounts in his possession but failed to include in the affidavit:

    a. January 9, 2018 tax payment to United States Treasury for $400.00;

    b. January 10, 2018 tax payment to United States Treasury for $400.00;

    c. March 30, 2018 tax payment to payroll service ($227.51);

    d. April 13, 2018 tax payment to payroll service ($223.50);

e. April 27, 2018 tax payment to payroll service ($191.51):

f. May 7, 2019 tax payment to United States Treasury for $400.00;

g. May 11, 2018 tax payment to payroll service ($190.52);

h. May 25, 2018 tax payment to payroll service ($227.50);

i. June 8, 2018 tax payment to payroll service ($191.52);

j. June 22, 2018 tax payment to payroll services ($219.74);

k. July 6, 2018 tax payment to United States Treasury for $400.00;

l. July 2, 2018 tax payment to FreeTax USA tax preparation service ($11.65);

m. August 3, 2018 tax payment to payroll services ($99.80);

n. August 17, 2018 tax payment to payroll services ($193.96);

o. August 31, 2018 tax payment to payroll services ($197.79);

p. September 14, 2018 tax payment to payroll services ($239.75);

q. September 17, 2018 tax payment to United States Tresury for $400.00;

r. September 28 2018 tax payment to payroll services ($274.42);

s. October 12, 2018 tax payment to payroll services ($292.47);

t. October 26, 2018 tax payment to payroll services ($251.90);

u. November 9, 2018 tax payment to payroll services ($371.56);

v. November 23, 2018 tax payment to payroll services ($335.09);

w. December 7, 2018 tax payment to payroll services ($151.24);

x. December 21, 2018 tax payment to payroll services (147.18);

y. December 10, 2018 tax payment to United States Treasury for $450.00;

z. January 4, 2019 tax payment to payroll services ($314.91);

aa. January 18, 2019 tax payment to payroll services ($443.61);

    bb. February 2, 2019 business tax payment to State of Michigan ($4,713.28);

    cc. March 14, 2019 business tax payment to State of Michigan ($4,400.00);

    dd. April 16, 2019 business tax payment to State of Michigan ($6,406.44);

    ee. June 21, 2019 business tax payment to State of Michigan ($5,385.03);

    ff. July 9, 2019 business tax payment to State of Michigan ($5,122.83);

    gg. July 17, 2019 tax payment to United States Treasury for $16,952.05;

    hh. August 13, 2019 business tax payment to State of Michigan ($4,983.21);

    ii. November 14, 2019 business tax payment to State of Michigan ($5,572.99);

    jj. November 14, 2019 business tax payment to State of Michigan ($6,654.87);

    kk. December 19, 2019 business tax payment to State of Michigan ($7,105.63)

    ll. Additionally tax payments to payroll service from February 2019 through January 2020 or at least $21,000.00.

61. Defendant English relied only on stale bank records to create a misleading assertion concerning tax obligations of Plaintiff.

62. Defendant English's failure to update the bank records resulted in an omission of the following tax payments on the part of Plaintiff:

    a. April 13, 2020 tax payment to State of Michigan ($5,281.00);

    b. April 13, 2020 tax payment to United States Treasury for $29,660.00.

63. The remaining paragraphs of the affidavit fail to establish probable cause for the search of Plaintiff's dwelling, his curtilage, or his outbuildings.

64. The affidavit fails to establish probable cause for a search of the dwelling due to conclusory assertions, a lack of facts to establish a probable cause determination by a neutral and detached magistrate, misleading information, and a lack of specificity as to the areas to be

searched or items to be seized.

65. On April 8, 2022, Plaintiff and no other adult with authority or apparent authority to grant consent gave consent to Defendant English or any other Defendant to enter his property, his curtilage, his outbuildings, or his dwelling.

66. The search warrant and affidavit were invalid on their face.

67. No reasonably trained or experienced police officer would have believed that probable cause existed based upon the affidavit in support of the search warrant.

68. The entry into Plaintiff's dwelling and his outbuildings by Defendants English, Dangl, Bordner, Bourgeois, Lewis, Kassuba, McDonald, Josephs, Oliver, Klomparens, Godair, Stimac, Meyer, Birgy, Reska, Izzard, Brinkman, and Choice was done without a valid warrant.

69. The entry into Plaintiff's dwelling and his outbuildings by Defendants English, Dangl, Bordner, Bourgeois, Lewis, Kassuba, McDonald, Josephs, Oliver, Klomparens, Godair, Stimac, Meyer, Birgy, Reska, Izzard, Brinkman, and Choice was done without a valid exception to the warrant requirement.

70. The entry into Plaintiff's dwelling without a valid warrant by Defendants English, Dangl, Bordner, Bourgeois, Lewis, Kassuba, McDonald, Josephs, Oliver, Klomparens, Godair, Stimac, Meyer, Birgy, Reska, Izzard, Brinkman, and Choice is presumed to be in violation of the Fourth Amendment to the United States Constitution.

71. Defendants McDonald, Josephs, and Kassuba were supervisory state actors and had the ability, opportunity and authority to prevent the constitutional violation from occurring.

72. On April 11, 2022, it was clearly established that a government actor could not enter a dwelling or the curtilage of a dwelling without a valid warrant or an exception to the

warrant requirement of the Fourth Amendment.

73. The conduct of Defendants English, Dangl, Bordner, Bourgeois, Lewis, Kassuba, McDonald, Josephs, Oliver, Klomparens, Godair, Stimac, Meyer, Birgy, Reska, Izzard, Brinkman, and Choice was a direct and proximate cause of the constitutional violation on April 11, 2022.

74. Plaintiff was damaged as a result of the conduct of Defendants English, Dangl, Bordner, Bourgeois, Lewis, Kassuba, McDonald, Josephs, Oliver, Klomparens, Godair, Stimac, Meyer, Birgy, Reska, Izzard, Brinkman, and Choice in that Plaintiff lost the protection of his personal privacy and the protection of the Fourth Amendment to the United States Constitution as well as anxiety, humiliation, excessive stress, worry, and a feeling of the loss of security of his dwelling.

75. Notwithstanding the varied roles of each individual Defendant, Defendant English engaged in concerted action with other officers from the Michigan State Police Marihuana and Investigation Section in causing the Fourth Amendment violation in this Complaint.

WHEREFORE, Plaintiff requests this Honorable Court enter judgment in the amount of not less than $25,000.00 against Defendants English, Dangl, Bordner, Bourgeois, Lewis, Kassuba, McDonald, Josephs, Oliver, Klomparens, Godair, Stimac, Meyer, Birgy, Reska, Izzard, Brinkman, and Choice each.

### COUNT II – VIOLATION OF THE FOURTH AMENDMENT
(42 U.S.C. §1983 – excessive force/unlawful punishment – Defendant Josephs)

76. Paragraphs 1 through 75 above are incorporated herein by reference.

77. At approximately 8:00 a.m. on April 11, 2022, Plaintiff heard a loud pounding on his front door.

78. When Plaintiff opened his front door, armed police officers were present and several had their firearms pointed at him.

79. Plaintiff was verbally ordered to exit the house and get on the ground.

80. Unknown Defendants physically forced Plaintiff to the ground after he began to comply and then handcuffed him.

81. Plaintiff exited his home barefoot and not appropriately dressed for the weather.

82. Plaintiff was held outside for approximately 45 minutes.

83. Plaintiff on several occasions requested to see the warrant but each request was refused until the police began to leave several hours later.

84. After initially refusing to answer any questions, Plaintiff was placed into a van where he was interviewed by a female detective until he decided to not answer any further questions.

85. Plaintiff was then removed from the van by an officer that grabbed his wrists and was held in that position for several minutes.

86. During this time, Plaintiff informed Defendant Josephs that he needed to urinate.

87. Defendant Josephs refused to allow him to use any of the restrooms in the dwelling.

88. Defendant Josephs told him he would have to relieve himself in the front yard.

89. Plaintiff's dwelling has an adjacent home on both sides and there are dwellings across the street.

90. Plaintiff requested multiple times to be allowed to use a bathroom in the home but each request was refused.

91. To relieve the physical pain due to the need to urinate, Plaintiff eventually had to relieve himself outdoors by exposing his penis from his pants to urinate.

92. Prior to urinating in his front yard, Plaintiff expressed to Defendant Josephs that he was basically being forced to commit indecent exposure.

93. Defendant Josephs laughed and said something to the effect of "what the f*** are you going to do about it."

94. Approximately two minutes after urinating in his front yard, Plaintiff was then taken inside his home and handcuffed to a chair.

95. Plaintiff remained handcuffed to the chair in his kitchen the duration of the presence of the officers in his home.

96. Plaintiff estimates the Defendants were in his home six to seven hours total.

97. State actors acting under color of state law have a duty to conduct themselves according to normal social standards.

98. Treatment of persons that are being detained under government authority must be humane and be within the bounds of normal decency.

99. The conduct of Defendant Josephs violates Plaintiff's right to be free from unreasonable excessive force or unauthorized punishment under the Fourth Amendment.

100. Notwithstanding the fact that the conduct occurred in the course of executing the invalid warrant, the conduct of Defendant Joseph during the seizure of Plaintiff also violates the Fourth Amendment.

101. Standards of common decency would preclude exposure of genitals to urinate in a residential neighborhood yard when surrounded by other homes and a public roadway.

102. Exposure of genitals to urinate in an area openly visible to others is considered behavior unacceptable to a civilized society by virtue of a state law making it a crime.

103. Depending on the circumstances, a need to urinate suppressed for a significant period of time can cause significant discomfort and/or pain.

104. Suppressing a need to urinate has been medically recognized as having the potential to cause urinary tract infections.

105. Suppressing a need to urinate has been medically recognized as having the potential to cause voiding dysfunction.

106. When Plaintiff asked Defendant Josephs if he was requiring Plaintiff to expose his penis to urinate, Defendant Josephs replied to the effect of "either that or pee in your pants."

107. Defendant Joseph's conduct was deliberately indifferent to Plaintiff's physical discomfort.

108. Defendant Joseph's conduct was deliberately indifferent to the medical complications it could cause.

109. Defendant Joseph's conduct served no legitimate state interest.

110. Defendant Joseph's conduct was deliberately indifferent to the sensitivities and expectations of Plaintiff's neighbors or passersby on the public roadway.

111. As of March, 1989 and up through April 11, 2022, it was clearly established that the passing of urine was entitled to privacy and its performance in public was prohibited by local law and social custom.

112. As of 2001 and up through April 11, 2022, it was clearly established that police refusal to allow a detainee to urinate was unreasonable under the Fourth or Fourteenth Amendments

113. As of April 11, 2022, no reasonable officer would have believed that Defendant Joseph's conduct was lawful.

114. Defendant Joseph's conduct was a direct and proximate cause of the violation of Plaintiff's Fourth Amendment rights.

115. Defendant Joseph's conduct damaged Plaintiff by causing him physical discomfort and pain as well as embarrassment, humiliation, anxiety, excessive stress, and mental anguish.

WHEREFORE, Plaintiff requests this Honorable Court enter judgment in the amount of not less than $100,000.00 against Defendant Josephs.

### RELIEF REQUESTED

WHEREFORE, Plaintiffs request this Honorable Court:

1. Enter judgment against all Defendants as specified in the above counts in an amount as awarded by the jury but in no case less than the relief specified in each count;

2. Award Plaintiff his costs and attorney fees as authorized by 42 U.S.C §1988;

3. Award Plaintiff interest on the judgment to the date of the complaint as authorized by law;

4. Because the conduct of all individual Defendants was willful, malicious and intended to inflict monetary loss, humiliation, embarrassment and mental anxiety to Plaintiff, award exemplary damages to Plaintiff in an amount of not less than $100,000.00; and

5. Award Plaintiff any other relief as equity and justice demand.

Signature by Plaintiff:

2-10-25
Date

_____
Derek Antol



Signature by Attorney:

02/11/2025                           */s/ J. Nicholas Bostic*
Date                                  J. Nicholas Bostic P40653
                                         Attorney for Plaintiff

## **JURY DEMAND**

Plaintiff hereby demands trial by jury on all counts.

02/11/2025                           */s/ J. Nicholas Bostic*
Date                                  J. Nicholas Bostic P40653
                                         Attorney for Plaintiff
                                         909 N. Washington Ave.
                                         Lansing, MI 48906
                                         517-706-0132